******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* FRANCIS ANDERSON
## (AC 40378)

Sheldon, Prescott and Pellegrino, Js.

*Syllabus*

The defendant, who had been convicted of assault in the second degree and reckless endangerment in the second degree, appealed to this court from the trial court's denial in part and dismissal in part of his motion to correct an illegal sentence, and from the dismissal of his motion to revise the judgment mittimus. The defendant had been in the custody of the Psychiatric Security Review Board and confined to a state hospital after previously having been found not guilty of various charges by reason of mental disease or defect in 2008. While confined at the hospital, the defendant commenced a pattern of assaulting other patients and hospital staff and various charges were brought against him related thereto. When he failed to post bond for those charges, he was transferred to a correctional facility. He subsequently was found guilty of assault in the second degree and reckless endangerment in the second degree. Eleven months before the defendant's release date on his 2008 conviction, the trial court sentenced him on September 12, 2016, on the assault and reckless endangerment charges to a term of incarceration that was to run consecutively to the term of incarceration that he was then serving. The court remanded him to the custody of the Commissioner of Correction instead of ordering that he be returned to the state hospital. The defendant claimed in his motion to correct that the trial court lacked the authority to remand him to the custody of the Commissioner of Correction and that he, instead, should have been returned to the state hospital where he had been serving his 2008 sentence. The defendant further claimed that all time that he had spent in prison completing his 2008 sentence as presentence jail credit should be credited toward the consecutive sentence on the assault and reckless endangerment charges. He further claimed that the judgment mittimus should be revised to implement the court's order that he receive all pretrial credits to which he was entitled. The court denied the defendant's motion to correct, concluding that it was not appropriate to allow the defendant to remain at the state hospital as a consequence of his prior insanity acquittal when he had seriously injured a staff member and endangered others, and that the defendant had not proved that he suffered from a mental disease or defect at the time he committed the crimes that led to his conviction on the assault and reckless endangerment charges. The court also dismissed the defendant's request for pretrial jail credit for lack of jurisdiction, ruling that it did not constitute a viable claim for relief under the applicable rule of practice (§ 43-22). *Held* that the trial court properly denied in part and dismissed in part the defendant's motion to correct an illegal sentence, and dismissed his related motion to revise the judgment mittimus: even if the trial court should have returned the defendant to the state hospital instead of remanding him to prison, the defendant already had received full credit toward his 2008 sentence for the period in which he was incarcerated from September 12, 2016, to August 5, 2017, the release date for his 2008 conviction, and because he was not entitled to jail time credit for the same period of incarceration toward the service of two separate sentences that did not run concurrent to each other, the defendant's claim that the eleven months at issue should be credited a second time therefore failed; moreover, the defendant was not entitled to presentence credit for all time he had spent incarcerated in lieu of bail in this case or to a revision of the judgment mittimus to implement the court's order that he receive all pretrial credits to which he was entitled, as the trial court's jurisdiction under § 43-22 applies only to claims that arise from the sentencing proceeding, the defendant's claim concerned the legality of his sentence as calculated by Department of Correction and did not arise from the sentencing proceeding, and, therefore, the trial court properly dismissed the claim for lack of subject matter jurisdiction.

Argued October 24, 2018—officially released January 29, 2019

Substitute information charging the defendant with the crime of assault in the second degree and with four counts of the crime of reckless endangerment in the second degree, brought to the Superior Court in the judicial district of Middlesex and tried to the court, *Vitale, J.*; judgment of guilty, from which the defendant appealed to this court, which affirmed the judgment of the trial court; thereafter, the Supreme Court denied the defendant's petition for certification to appeal; subsequently, the court, *Vitale, J.*, denied in part and dismissed in part the defendant's motion to correct an illegal sentence, and the defendant appealed to this court; thereafter, the court, *Vitale, J.*, dismissed the defendant's motion to revise or correct the judgment mittimus, and the defendant filed an amended appeal. *Affirmed.*

*Monte P. Radler*, public defender, for the appellant (defendant).

*Nancy L. Walker*, assistant state's attorney, with whom, on the brief, were *Peter A. McShane*, former state's attorney, and *Jeffrey Doskos*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Francis Anderson, appeals following the trial court's denial in part and dismissal in part of his motion to correct an illegal sentence, and from the dismissal of his related motion for a new mittimus to implement the court's order on the date it imposed the challenged sentence that he receive all pretrial jail credits to which he is legally entitled toward that sentence. The sentence at issue is a term of incarceration, which the court ordered that the defendant serve consecutively to an unexpired term of incarceration that he was serving at the time of the offenses at issue at the Whiting Forensic Division of Connecticut Valley Hospital (Whiting), to which he had been committed to receive psychiatric care and treatment following his acquittal by reason of mental disease or defect of a third set of unrelated charges. The defendant does not challenge the length of his consecutive sentence. Instead, he claims that that sentence was imposed on him in an illegal manner because the court, after pronouncing that sentence, ordered that he be transferred at once to a state correctional facility to complete his earlier sentence and receive such further psychiatric care and treatment, as necessary, rather than returned to Whiting for those purposes. Claiming that the court had no jurisdiction to enter any order with respect to his earlier sentence, which allegedly would have been completed in a hospital setting rather than a prison had the court not ordered his immediate imprisonment after sentencing, the defendant seeks to correct the court's alleged error by crediting all time that he improperly spent in prison completing his earlier sentence as presentence jail credit toward his consecutive sentence, thereby advancing his release date on that sentence by approximately eleven months. The trial court disagreed, denying that portion of the defendant's motion to correct, in which he made the foregoing argument, and dismissing his parallel claim that the pretrial jail time credit to which he allegedly was entitled had not properly been credited toward his sentence. On this appeal, we affirm all aspects of the trial court's challenged rulings.

The following procedural history is relevant to the defendant's claims on appeal. "On January 10, 2008, the [defendant] entered guilty pleas, pursuant to the *Alford* doctrine,[1] to three counts of burglary . . . and one count of larceny . . . and admitted a violation of probation. The state entered a nolle prosequi as to the remaining charges. On March 6, 2008, the trial court sentenced the [defendant] to a total effective sentence of five years imprisonment and three years of special parole. The [defendant] did not file a direct appeal." (Footnote in original; internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 308 Conn. 456, 458, 64 A.3d 325 (2013). On May 6, 2011, the

defendant received a consecutive sentence of five years imprisonment on additional charges. The release date for that sentence, to which we have referred as "the 2008 sentence," was calculated by the Department of Correction (department) to be August 5, 2017. "Following an incident that occurred on or about July 6, 2012, the defendant was charged with assault of a correction officer, breach of the peace and failure to submit to fingerprinting. . . . The defendant subsequently was found not guilty of these charges by reason of mental disease or defect.[2] On August 15, 2013, the trial court, *McMahon, J.*, committed the defendant to the custody of the Commissioner of Mental Health and Addiction Services. The defendant was transferred to . . . Whiting . . . where he received a psychiatric evaluation pursuant to General Statutes § 17a-582.[3] The October 23, 2013 report resulting from that evaluation recommended that the defendant be returned to prison. On November 18, 2013, Judge McMahon disagreed with the hospital's recommendation and, consistent with the contrary recommendation of an independent evaluator sought by the defendant pursuant to § 17a-582 (c),[4] ordered that the defendant be committed to the custody of the Psychiatric Security Review Board (board) and confined at the hospital for a period not exceeding ten years.[5] On February 7, 2014, the board held the defendant's initial commitment hearing, after which it concluded that he had a psychiatric illness that required care, custody and treatment. It concluded further that he had a psychiatric disability to the extent that his discharge would constitute a danger to himself or others, and that he required confinement in a maximum security setting. Accordingly, the board ordered that the defendant remain confined at the hospital under maximum security conditions.[6]

"Upon arriving at the hospital, the defendant allegedly commenced a pattern of assaulting other patients and hospital staff. As a result of his conduct on various dates from October, 2013, through February, 2014, he was charged with several misdemeanors.[7] Thereafter, in April, 2014, he was charged with, inter alia, two counts of assault of health care personnel, a class C felony. See General Statutes § 53a-167c. In connection with all but one of these charges, the defendant was released on a promise to appear and ordered returned to Whiting.[8] Also, in April, 2014, the state filed a motion for bond review, in which it requested that the trial court modify the defendant's existing conditions of release and impose an appropriate monetary bond. The defendant filed an opposition to the state's motion and an accompanying memorandum of law, arguing therein that the court lacked the authority to impose a monetary bond under the circumstances of this case. The parties attached exhibits to these filings, including the hospital's October 23, 2013 report concerning its psychiatric evaluation of the defendant, several reports from the

defendant's independent psychiatric evaluator, the transcript of the commitment hearing before the board and the board's report recommending that the defendant be confined in a maximum security setting.

"On June 18, 2014, the trial court, *Gold, J.* . . . concluded that, although the defendant was a confined insanity acquittee, the court retained the authority, conferred by General Statutes § 54-64a . . . and Practice Book § 38-4 . . . to set a monetary bond upon his commission of new offenses in the hospital setting, particularly for the purpose of ensuring the safety of other persons. The court then scheduled an evidentiary hearing on the state's motion for bond review to consider whether the defendant's existing conditions of release should be modified. Before that hearing could occur, however, the defendant was charged with another felony count of assault of health care personnel, as well as three additional misdemeanors. On August 25, 2014, at the defendant's arraignment on those charges, the court set a bond in the amount of $100,000, cash or surety. Because the defendant was unable to post that bond, he was transferred to the custody of the Commissioner of Correction. . . . See General Statutes § 54-64a (d). The court directed that the mittimus reflect that the defendant required mental health treatment and that he should be housed and monitored in a way to ensure, to the extent possible, the safety of other inmates and correction personnel." (Footnote added; footnotes omitted; internal quotation marks omitted.) *State* v. *Anderson*, 319 Conn. 288, 292–97, 127 A.3d 100 (2015).[9]

The defendant appealed to our Supreme Court, claiming "that the trial court's order setting a monetary bond as a condition of release and, because he was unable to post that bond, his subsequent transfer to the custody of the Commissioner of Correction were in violation of his constitutional rights, namely, his right to bail under the state constitution and his right to procedural due process under the federal constitution." Id., 299. The court rejected each of the defendant's claims, and further held "that the defendant's remedy, if he believes that the mental health treatment he is receiving while in the custody of the Commissioner of Correction is constitutionally inadequate, is through an expedited petition for a writ of habeas corpus challenging the conditions of his confinement." Id.

As a result of the incidents that occurred while he was at Whiting, the defendant was convicted, after a court trial, of one count of assault in the second degree in violation of General Statutes § 53a-60 (a) (3) and four counts of reckless endangerment in the second degree in violation of General Statutes § 53a-64 (a). At the defendant's sentencing hearing, the prosecutor argued that sending the defendant back to Whiting was not a viable option due to his repeated "violent propensities

toward staff, patients and inmates . . . ." Before articulating the defendant's position at the sentencing hearing, defense counsel called Dr. Madelon V. Baranoski, a forensic psychologist who met with and evaluated the defendant, to testify. Baranoski testified, inter alia, that Whiting was not a suitable placement for the defendant. In his remarks to the court, defense counsel explained the unique circumstances of the defendant: "He's a convicted criminal defendant awaiting sentencing . . . . He's [an] involuntarily committed insanity acquittee under the [jurisdiction of the board]. He's a sentenced prisoner with [a] concurrently running unexpired sentence and also a pretrial detainee under multiple docket numbers under which he remains incarcerated pursuant to a bond he was unable to post." Defense counsel argued that it was inappropriate to punish an insanity acquittee by incarceration, but acknowledged that "the only practical options [for the defendant] are available through the correction system . . . ." He explained that "he can't go back to Whiting untreated, and he shouldn't go back to Whiting, according to Dr. Baranoski, at all . . . ."

The court posited: "The question now is the nature of an appropriate sentence and more practically where the sentence will be served once it is imposed under the unique circumstances presented, and to ensure that [the defendant] receives the opportunity for appropriate treatment." The court then explained: "The . . . circumstances [of this case] are unique in that the defendant is presently now serving the aforementioned ten year sentence while also simultaneously an insanity acquittee, again, to speak colloquially, on different charges, and is now facing sentencing on subsequent crimes he committed at Whiting for which this court has found him criminally responsible. Thus, the defendant's sentencing presents the preliminary questions of whether and how the defendant can be moved to the [department's] jurisdiction for . . . these subsequent criminal offenses when he's still under technically the jurisdiction of the board although simultaneously also serving a criminal sentence in a different matter."

The court further explained: "The court has considered the sentencing goals as well as all the information before it, including balancing the defendant's rights to mental health treatment if needed with that of the rights of the victims under . . . the Connecticut constitution to be protected from the accused. . . .

"[T]he court intends to impose a sentence and order that the defendant be immediately transferred to the custody of the [department]. The court believes this action to be appropriate based on the serious nature of these allegations and is a consequence of the defendant's seemingly unabated proclivity to assault or threaten staff in a treatment setting or in corrections.

"In the court's view, it defies logic to conclude that

it would be appropriate to allow the defendant to remain at Whiting as a consequence of a prior insanity acquittal despite the fact that he thereafter seriously injured a staff member and endangered others. And this court has found that at the time of the assault that is before this court, the defendant did not prove he suffered from a mental disease or defect, as required by law. To conclude otherwise would mean the defendant would be free to commit new crimes, confident he would just be returned to the same facility among potential victims who are both staff and other patients. The victims have a constitutional right to be protected from the defendant." The court imposed a sentence of seven years incarceration, suspended after five and one-half years, and two years probation to be served consecutively to the 2008 sentence that he was then serving. The court thereupon ordered that the defendant be remanded to the custody of the Commissioner of Correction instead of returned to Whiting.

On January 20, 2017, the defendant filed a motion to correct "an illegal disposition and/or sentence imposed in an illegal manner." In his motion, the defendant argued that the court did not have the authority, when sentencing him on September 12, 2016, to remand him to the custody of the Commissioner of Correction. He claimed that because the sentence that was imposed on September 12, 2016, was to be served consecutively to the sentence that he was then serving, which was the 2008 sentence, he should have been returned to Whiting to continue serving the 2008 sentence, which is where he had been serving the 2008 sentence until he was transferred to the department as a pretrial detainee. He argued that because he had not been restored to sanity and was still hospitalized as an insanity acquittee at the time of his September 12, 2016 sentencing, he was entitled to be treated for his mental disease or defect instead of being punished by incarceration. He also asked the court to award him credit toward his consecutive sentence for all time he had spent in jail as a pretrial detainee in this case, which he inadvertently neglected to request when he was sentenced. The state did not file a written objection to the defendant's motion.

At the hearing on the motion to correct, defense counsel explained that he was "not asking the [reviewing court] to review the sentence itself. This motion is directed to the orders of the court as far as imposing the sentence and the impact of the court's order on custody of [the defendant]. . . . I'm proceeding specifically under the subsection [of Practice Book § 43-22], disposition imposed in an illegal manner." The defendant argued that the illegality of the sentence was the court's "imposition of the sentence consecutive to a sentence which did not expire until August of 2017, and then simultaneously ordering [the defendant] into [the department's] custody as a sentenced prisoner under

authority of that sentence that was running that had nothing to do with the subject matter of the trial. Essentially, Your Honor ordered [the defendant] to be taken directly into [the department's] custody upon sentencing to recommence serving an older sentence over which Your Honor, as trial judge, had no jurisdiction or authority . . . ."[10] The defendant also argued that he was entitled to credit toward his September 12, 2016 sentence for all the time he had spent in the custody of the Commissioner of Correction as a pretrial detainee.

In response, the state argued that the defendant's motion should be denied. The state contended that the court properly imposed the September 12, 2016, sentence to run consecutively to the defendant's 2008 sentence. The state further argued that the court properly declined to remand the defendant to Whiting on September 12, 2016 as it was not a safe environment for the defendant or the staff or other patients receiving treatment there. The state also argued that the court did not have jurisdiction pursuant to Practice Book § 43-22 over the defendant's claim for pretrial confinement credit.

The court orally denied the defendant's motion to correct, citing the rationale on which it relied in imposing the September 12, 2016 sentence. The court also dismissed the defendant's request for pretrial jail credit for lack of jurisdiction because that request did not constitute a viable claim for relief under Practice Book § 43-22. This appeal followed.

We begin by setting forth the following relevant legal principles. "The Superior Court is a constitutional court of general jurisdiction. In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence. . . . Because it is well established that the jurisdiction of the trial court terminates once a defendant has been sentenced, a trial court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. . . . [Practice Book] § 43-22 embodies a common-law exception that permits the trial court to correct an illegal sentence or other illegal disposition. . . . Thus, if the defendant cannot demonstrate that his motion to correct falls within the purview of § 43-22, the court lacks jurisdiction to entertain it. . . . [I]n order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding [itself] . . . must be the subject of the attack. . . .

"[A]n illegal sentence is essentially one [that] either

exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. By contrast . . . [s]entences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way [that] violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . . These definitions are not exhaustive, however, and the parameters of an invalid sentence will evolve . . . as additional rights and procedures affecting sentencing are subsequently recognized under state and federal law. . . .

"Recently, our Supreme Court explained, in addressing the trial court's dismissal on jurisdictional grounds of a motion to correct an illegal sentence that [t]he subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal. . . . At issue is whether the defendant has raised a colorable claim within the scope of Practice Book § 43-22 that would, if the merits of the claim were reached and decided in the defendant's favor, require correction of a sentence. . . . In the absence of a colorable claim requiring correction, the trial court has no jurisdiction to modify the sentence." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Jason B.*, 176 Conn. App. 236, 243–44, 170 A.3d 139 (2017).

"We review the [trial] court's denial of [a] defendant's motion to correct [an illegal] sentence under the abuse of discretion standard of review. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Logan*, 160 Conn. App. 282, 287, 125 A.3d 581 (2015), cert. denied, 321 Conn. 906, 135 A.3d 279 (2016). "Our determination of whether a motion to correct falls within the scope of Practice Book § 43-22 is a question of law and, thus, our review is plenary." (Internal quotation marks omitted.) *State* v. *Lugojanu*, 184 Conn. App. 576, 580, 195 A.3d 1191 (2018).

The defendant first claims that his 2016 sentence was imposed in an illegal manner because the court improperly ordered that he be immediately remanded to the custody of the Commissioner of Correction and incarcerated, instead of remanded to the custody of the board and returned to Whiting, where he had been serving his 2008 sentence.[11] He claims: "By having

imposed a consecutive sentence to an unexpired 2008 sentence, and subsequently ordering immediate imprisonment pursuant to the 2008 sentence, the trial court effectively modified the term of a valid judgment imposed by an earlier court without the legal authority to do so." The defendant thus is arguing that he should have been sent back to Whiting on September 12, 2016 to finish serving his 2008 sentence, which has now expired. By way of relief, the defendant asks this court to "remand [this case] with instructions to the trial court to impose its original sentence for the convictions in this case retroactive to September 12, 2016." The defendant explains: "The specific sentencing relief that [he] is seeking from this particular claim is retroactivity of the sentence imposed by [the] trial court from August 5, 2017, the estimated release date of the 2008 sentence, to its imposition date of September 12, 2016, an advance of [his] estimated release date from this sentence by nearly eleven months."

The defendant's claim is misplaced because, even if we assume, arguendo, that the trial court should have returned him to Whiting instead of remanding him to prison, he has already received full credit toward his 2008 sentence for the period in which he was incarcerated from September 12, 2016, to August 5, 2017. It is axiomatic that a defendant is not entitled to credit for the same period of incarceration, toward the service of two separate sentences, unless the court orders that such sentences are to be served concurrently.[12] The defendant's claim that the eleven months here at issue should be credited a second time therefore must fail.

The defendant's claim that the court erred in dismissing that portion of his motion to correct an illegal sentence in which he asserted that he was entitled to presentence credit for all time he had spent incarcerated in lieu of bail in this case, and his related request to revise his mittimus to implement the court's order that he receive all pretrial credits to which he was entitled, are likewise unavailing. As previously noted, the trial court's jurisdiction under Practice Book § 43-22 is narrow, applying only to limited claims that arise from the sentencing proceeding itself. See *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 199 n.21, 982 A.2d 620 (2009) ("[i]n order for the court to have jurisdiction over a motion to correct an illegal sentence [under Practice Book § 43-22] after the sentence has been executed, the sentencing proceeding . . . must be the subject of the attack" [internal quotation marks omitted]). The defendant's claim does not arise from the sentencing proceeding or, in fact, from any action taken by the trial court, but concerns, as he put it in his brief to this court, "the legality of his sentence as calculated by the department . . . ." Because the defendant's claim does not fall within the narrow ambit of § 43-22, the court properly dismissed it for lack of subject matter jurisdiction. See *State* v. *Montanez*, 149

Conn. App. 32, 41, 88 A.3d 575, cert. denied, 311 Conn. 955, 97 A.3d 985 (2014).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] General Statutes § 53a-13 provides in relevant part: "(a) In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law. . . ."

[3] General Statutes § 17a-582 provides in relevant part: "(a) When any person charged with an offense is found not guilty by reason of mental disease or defect pursuant to section 53a-13, the court shall order such acquittee committed to the custody of the Commissioner of Mental Health and Addiction Services who shall cause such acquittee to be confined, pending an order of the court pursuant to subsection (e) of this section, in any of the state hospitals for psychiatric disabilities . . . .

"(b) Not later than sixty days after the order of commitment pursuant to subsection (a) of this section, the superintendent of such hospital . . . shall cause the acquittee to be examined and file a report of the examination with the court, and shall send a copy thereof to the state's attorney and counsel for the acquittee, setting forth the superintendent's . . . findings and conclusions as to whether the acquittee is a person who should be discharged. . . ."

[4] Pursuant to § 17a-582 (c), following receipt of the hospital's report, counsel for the acquittee may seek a separate examination of the acquittee by a psychologist or psychiatrist of the acquittee's choice, and any resulting report from such examination must be filed with the trial court within thirty days of the filing of the hospital's report.

[5] Pursuant to § 17a-582 (d), the trial court, after receiving the results of a hospital evaluation conducted pursuant to § 17a-582 (b) and, if the acquittee requests it, a separate evaluation conducted by a psychologist or psychiatrist of the acquittee's choice pursuant to § 17a-582 (c), must conduct a hearing to determine whether the court may find that the acquittee should be either discharged, conditionally released or confined. See General Statutes § 17a-582 (e) (1) and (2). "If the court finds that the acquittee is a person who should be confined . . . the court shall order the acquittee committed to the jurisdiction of the board and . . . confined in a hospital for psychiatric disabilities . . . for custody, care and treatment pending a hearing before the board pursuant to section 17a-583; provided (A) the court shall fix a maximum term of commitment, not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense . . . ." General Statutes § 17a-582 (e) (1).

[6] Pursuant to § 17a-583 (a), "[t]he board shall conduct a hearing to review the status of [an insanity] acquittee within ninety days of an order committing the acquittee to the jurisdiction of the board," and, pursuant to § 17a-583 (b), at that hearing, "the board shall make a finding and act pursuant to section 17a-584." General Statutes § 17a-583 (b).

General Statutes § 17a-584 directs the board, at the hearing held pursuant to § 17a-583 (a), to "make a finding as to the mental condition of the acquittee . . . considering that its primary concern is the protection of society . . . ." It further authorizes the board to find that the acquittee either should be discharged, conditionally released or confined. See General Statutes § 17a-584 (1) through (3). "If the board finds that the acquittee is a person who should be confined, the board shall order the person confined in a hospital for psychiatric disabilities . . . for custody, care and treatment." General Statutes § 17a-584 (3).

General Statutes § 17a-599 provides in relevant part that, "[a]t any time the court or the board determines that the acquittee is a person who should be confined, it shall make a further determination of whether the acquittee is so violent as to require confinement under conditions of maximum security. . . ." Pursuant to General Statutes § 17a-561, "[t]he Whiting Forensic Division of the Connecticut Valley Hospital shall exist for the care and treatment of [inter alia] (1) patients with psychiatric disabilities, confined in facilities under the control of the Department of Mental Health and Addiction Services, who require care and treatment under maximum security

conditions . . . .”

[7] “The record indicates that, as a result of incidents occurring on five separate dates, the defendant was charged with a total of eleven misdemeanors, including one count of unlawful restraint in the second degree, three counts of assault in the third degree, two counts of threatening in the second degree, one count of criminal mischief in the third degree, three counts of disorderly conduct and one count of breach of the peace in the second degree.

“Moreover, the hospital’s October 23, 2013 report indicates that, between August 24, 2013, and October 1, 2013, while the defendant was being evaluated by the hospital, he engaged in an additional five unprovoked physical altercations with other patients, as well as other verbal altercations with both patients and hospital staff. None of these incidents resulted in any criminal charges against the defendant.” *State* v. *Anderson*, 319 Conn. 288, 294–95 n.11, 127 A.3d 100 (2015).

[8] “As to the charge of threatening in the second degree, the trial court, *Gold, J.*, imposed a $1000 nonsurety bond.” *State* v. *Anderson*, 319 Conn. 288, 295 n.12, A.3d 100 (2015).

[9] “At a subsequent hearing to address the defendant’s motion for stay of the trial court’s order setting a monetary bond pending disposition of this appeal . . . the court elaborated on its reasons for that order. It reiterated its belief that it ‘retain[ed] the inherent authority to set bond and to establish conditions of release, including financial conditions, even as to insanity acquittees who are alleged to have committed new crimes during their period of insanity commitment.’ The court reasoned further that a rule to the contrary ‘would effectively deprive the court of its right—in fact, its obligation—to set conditions of release that are necessary to ensure that the safety of other persons will not be endangered.’ Moreover, according to the court, such a rule ‘would mean that an insanity acquittee, regardless of the frequency and seriousness of his . . . new crimes committed during the commitment period, would be free to commit those crimes, confident that he would be ultimately returned to the same facility to be placed, again, among the same staff and same patients that [he allegedly] victimized in the first instance.’ The court observed that the defendant allegedly committed seven assaults on seven separate people at seven different times.

“The trial court further explained that, as authorized by Practice Book § 38-4 (b), it had considered the defendant’s history of violence and the risk posed to the physical safety of the staff and other patients at the hospital, and had concluded that financial conditions of release were necessary to ensure their safety. Moreover, the court indicated that it had considered the rights of victims afforded by the state constitution, particularly their right to be protected from an accused. . . . Additionally, the court reasoned that, even if the defendant had a right to psychiatric treatment, it was not an unqualified and inalienable right to a certain type of treatment, and the nature of the treatment afforded to him had to be determined with reference to the management issues that he presented, with his interests weighed against the interests of other patients who also were entitled to treatment. Finally, the court noted that, pursuant to its order, the defendant was to receive psychiatric treatment while in the custody of the Commissioner of Correction, and correction officials remained free to consult with the hospital and the board regarding that treatment.” *State* v. *Anderson*, supra, 319 Conn. 297–99.

[10] At the hearing on the motion to correct, the prosecutor explained that the defendant had not been only an insanity acquittee on September 12, 2016. He also was a sentenced inmate on the 2008 sentence, and that is the sentence to which the court in this case ordered the defendant to serve his sentence consecutively. The prosecutor explained: “I think what makes this case even more unique than some of the cases that [defense counsel] has cited is that the defendant was serving a [sentence in the custody of the Commissioner of Correction] concurrently with a [commitment to the board as a result of previously having been found not guilty by reason of mental disease or defect]. If he was only [an acquittee as a result of having been found not guilty by reason of mental disease or defect], and the court sentenced him to a term of incarceration consecutive to that, then I would agree with [defense counsel]. I don’t necessarily think the court could do that; it would have to be stayed, much like the other cases have indicated. The court sentenced him to a period of incarceration consecutive to the . . . sentence of incarceration [in the custody of the Commissioner of Correction], and I had the same questions in mind that the court has asked [defense counsel]: where should he serve his sentence?”

[11] The defendant does not challenge the trial court's authority to impose his 2016 sentence, or the sentence itself.

[12] See General Statutes § 53a-8 (b), which provides in relevant part: "Where a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run; (2) if the sentences run consecutively, the terms are added to arrive at an aggregate term and are satisfied by discharge of such aggregate term."

See also General Statutes § 18-98d (a) (1), which provides in relevant part: "Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (A) *each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement* . . . ." (Emphasis added.)