******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# FRANCIS ANDERSON *v.* COMMISSIONER OF CORRECTION
## (AC 41434)

Lavine, Keller and Devlin, Js.

*Syllabus*

The petitioner, who had been convicted of assault in the second degree and reckless endangerment in the second degree, sought a writ of habeas corpus, claiming that the conditions of his confinement were illegal because he was receiving constitutionally inadequate mental health treatment. The petitioner was an insanity acquittee who had been confined to a state psychiatric hospital at the time of his crimes. During the petitioner's sentencing hearing, the trial court heard testimony from a psychologist that the petitioner should be transferred to a specialized behavioral unit in a prison in Maine that provided the treatment program she had recommended for the petitioner. The court did not order that the petitioner be returned to the hospital but remanded him instead to the custody of the respondent, the Commissioner of Correction. Subsequent to the filing of his habeas petition, the petitioner filed an emergency motion for an expedited hearing to compel the Department of Correction to follow the psychologist's treatment recommendations. After the respondent filed a motion to consolidate the emergency motion with the habeas trial, the court conducted a status conference on the motion to consolidate but did not grant the motion or specify if, at the next scheduled court date, there would be a hearing on the emergency motion or a consolidated habeas trial. During the proceeding before the habeas court, discussion between counsel and the court indicated that it was the court's intention to conduct the emergency hearing rather than a lengthy trial. After the hearing, the court issued an oral decision in which it rendered judgment denying the habeas petition. The petitioner then filed a motion for reconsideration, alleging that because the proceeding had been a hearing solely on his emergency motion, his rights to procedural due process were violated on the grounds that he had no notice that his habeas petition also would be decided and that he was denied a meaningful opportunity to be heard. The court granted the motion for reconsideration and affirmed its denial of the habeas petition. The court thereafter granted the petitioner certification to appeal, and the petitioner appealed to this court. *Held* that the ambiguities in the habeas proceeding should be interpreted in favor of the petitioner, as he reasonably believed that he was proceeding solely on his emergency motion and that his habeas trial would occur at a later date: the court, during the status conference, never formally granted the respondent's motion to consolidate, which resulted in the petitioner's uncertainty regarding the purpose of the subsequent proceeding, the colloquy during the status conference between the court and the respondent's counsel compounded the ambiguity, and the court scheduled the subsequent hearing for one-half day, which seemingly suggested that it was bifurcating the adjudication of the emergency motion and the habeas petition; moreover, the petitioner had sought a continuance solely for the hearing on his emergency motion, which the court granted without clarification that it would also schedule the habeas trial for that date, the habeas court thereafter repeatedly indicated that the matter before it was only the emergency motion, although the court appeared conflicted on the status of the case, as it suggested both that the emergency motion already had been resolved and that the proceeding before it was an expedited habeas trial, and the fact that the pleadings were not closed at the time of the proceeding before the habeas court supported the petitioner's belief that the proceeding scheduled for that date would not be a trial on his habeas petition; accordingly, the judgment was reversed and the case was remanded for further proceedings because, to hold otherwise, would deprive the petitioner of his procedural due process rights to be duly notified of the nature of the pending proceeding and to present fully his evidence and arguments to the court.

Argued February 13—officially released June 23, 2020

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the petitioner filed an emergency motion for a temporary order to compel the provision of certain mental health treatment recommendations; thereafter, the case was tried to the court, *Hon. Edward J. Mullarkey*, judge trial referee; judgment denying the petition; subsequently, the court granted the petitioner's motion for reconsideration and affirmed the judgment denying the petition, and the petitioner, on the granting of certification, appealed to this court. *Reversed*; *further proceedings.*

*Jennifer B. Smith*, assigned counsel, with whom, on the brief, was *Darcy McGraw*, assigned counsel, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (respondent).

*Opinion*

DEVLIN, J. The petitioner, Francis Anderson, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus, which alleged that the conditions of his confinement were illegal because he was receiving constitutionally inadequate mental health treatment while he was in the custody of the respondent, the Commissioner of Correction. On appeal, the petitioner argues that the habeas court violated his right to procedural due process under the fourteenth amendment to the United States constitution by failing to provide him adequate notice of the habeas trial and denying him a meaningful opportunity to be heard. We reverse the judgment of the habeas court.[1]

The following facts and procedural history, as previously set forth by our Supreme Court and this court, are relevant. "The [petitioner] . . . has an extensive history of psychiatric problems and involvement with the criminal justice system. He has spent much of his adult life either incarcerated or in other institutionalized settings. Following an incident that occurred on or about July 6, 2012, the [petitioner] was charged with assault of a correction officer, breach of the peace and failure to submit to fingerprinting. The [petitioner] subsequently was found not guilty of these charges by reason of mental disease or defect. On August 15, 2013, the trial court, *McMahon, J.*, committed the [petitioner] to the custody of the Commissioner of Mental Health and Addiction Services. The [petitioner] was transferred to the Whiting Forensic Division of Connecticut Valley Hospital [Whiting] . . . .

"Upon arriving at [Whiting], the [petitioner] allegedly commenced a pattern of assaulting other patients and hospital staff. As a result of his conduct on various dates from October, 2013, through February, 2014, he was charged with several misdemeanors. Thereafter, in April, 2014, he was charged with, inter alia, two counts of assault of health care personnel, a class C felony. See General Statutes § 53a-167c. In connection with all but one of these charges, the [petitioner] was released on a promise to appear and ordered returned to [Whiting]. Also, in April, 2014, the state filed a motion for bond review, in which it requested that the trial court modify the [petitioner's] existing conditions of release and impose an 'appropriate' monetary bond. . . .

"On June 18, 2014, the trial court, *Gold, J.*, concluded that, although the [petitioner] was a confined insanity acquittee, the court retained the authority, conferred by General Statutes § 54-64a and Practice Book § 38-4, to set a monetary bond upon his commission of new offenses in the hospital setting, particularly for the purpose of ensuring the safety of other persons. . . . On August 25, 2014 . . . the court set a bond in the amount of $100,000, cash or surety. Because the [petitioner]

was unable to post that bond, he was transferred to the custody of the Commissioner of Correction." (Footnotes omitted.) *State* v. *Anderson*, 319 Conn. 288, 292–97, 127 A.3d 100 (2015) (*Anderson I*). "The [respondent] thereafter directed that the [petitioner] be confined at Northern Correctional Institution [Northern]." Id., 297 n.16. On appeal to our Supreme Court, the court affirmed the trial court's imposition of a monetary bond. Id., 290–92. The court further held that, "[i]f, however, at any time, the [petitioner] believes that the treatment he is receiving is inadequate, he may pursue an expedited petition for a writ of habeas corpus challenging the conditions of his confinement." Id., 325.

Subsequently, "[a]s a result of the incidents that occurred while he was at Whiting, the [petitioner] was convicted, after a court trial, of one count of assault in the second degree in violation of General Statutes § 53a-60 (a) (3) and four counts of reckless endangerment in the second degree in violation of General Statutes § 53a-64 (a). At the [petitioner's] sentencing hearing, the prosecutor argued that sending the [petitioner] back to Whiting was not a viable option due to his repeated 'violent propensities toward staff, patients and inmates . . . .' Before articulating the [petitioner's] position at the sentencing hearing, defense counsel called Dr. Madelon V. Baranoski, a forensic psychologist who met with and evaluated the [petitioner], to testify. Baranoski testified, inter alia, that Whiting was not a suitable placement for the [petitioner]. In his remarks to the court, defense counsel explained the unique circumstances of the [petitioner]: 'He's a convicted criminal defendant awaiting sentencing . . . . He's [an] involuntarily committed insanity acquittee under the [jurisdiction of the Psychiatric Security Review Board].' Defense counsel argued that it was inappropriate to punish an insanity acquittee by incarceration, but acknowledged that 'the only practical options [for the petitioner] are available through the correction system . . . .' [Defense counsel] explained that 'he can't go back to Whiting untreated, and he shouldn't go back to Whiting, according to Dr. Baranoski, at all . . . .'" *State* v. *Anderson*, 187 Conn. App. 569, 578–79, 203 A.3d 683 (*Anderson II*), cert. denied, 331 Conn. 922, 206 A.3d 764 (2019).

Instead, in a report commissioned by Dr. Baranoski on the petitioner's mental health, which was submitted to the sentencing court, she recommended that "[the petitioner] is a candidate for a specialized behavioral unit that can provide integrated treatment including medication, group treatment, affect management strategies and opportunities to practice social engagement and conflict management." She noted that "[s]uch a unit does not now exist in Connecticut" and strongly encouraged that the petitioner be transferred to a new facility. In particular, Dr. Baranoski recommended a maximum security prison in Warren, Maine, that pro-

vides the treatment program she recommended for the petitioner.

Ultimately, "[t]he court imposed a sentence of seven years [of] incarceration, suspended after five and one-half years, and two years [of] probation to be served consecutively to the . . . sentence that he was then serving. The court thereupon ordered that the [petitioner] be remanded to the custody of the [respondent] instead of returned to Whiting." *Anderson II*, supra, 187 Conn. App. 580. In issuing the sentencing order, the court further "order[ed] that the [petitioner] receive mental health treatment to include a behavioral management approach or other specialized approach as recommended by Dr. Baranoski to include medication or in the alternative consideration for placement out of state at . . . the maximum security prison in Warren, Maine . . . referenced in Dr. Baranoski's report . . . ." On appeal, this court affirmed the petitioner's sentence. *Anderson II*, supra, 585–86.

On June 13, 2017, the petitioner filed a self-represented petition for a writ of habeas corpus, alleging that the conditions of his confinement were illegal because he was receiving constitutionally inadequate mental health treatment. Along with his petition, the petitioner simultaneously filed, with the assistance of a senior assistant public defender, a motion to refer his petition to the public defender's office for the appointment of counsel. On June 20, 2017, the court, *Oliver, J.*, granted the motion, and the petitioner's counsel filed her appearance on July 5, 2017.

On December 12, 2017, the petitioner filed an emergency motion for a temporary order seeking to compel the Department of Correction (department) to follow Dr. Baranoski's treatment recommendations contained in her report, which was attached as an exhibit. In his emergency motion, the petitioner offered allegations similar to those in his habeas petition and expanded on his claim that he was receiving constitutionally inadequate mental health treatment. In particular, the petitioner alleged that the department was not following Dr. Baranoski's treatment recommendations and had not undertaken any action to improve the petitioner's mental health. The motion further alleged that, instead, the department was subjecting the petitioner to extended periods of isolated confinement, directly contrary to Dr. Baranoski's recommendations. The petitioner also requested "an expedited hearing, in accordance with . . . *Anderson* [*I*]," on the emergency motion and quoted the portion of *Anderson I* entitling him to an expedited habeas petition to challenge the conditions of his confinement. See *Anderson I*, supra, 319 Conn. 299.

In response, on January 2, 2018, the respondent moved to consolidate the hearing on the petitioner's emergency motion with a trial on the merits of the

habeas petition. The respondent argued that the relief sought in the petitioner's emergency motion was identical to the relief requested in his habeas petition. The respondent therefore contended that a subsequent trial would almost certainly result in duplicative submissions of identical evidence and a waste of judicial resources, thus necessitating a consolidation of both proceedings. The respondent also noted that he had no objection to an expedited habeas trial.

On January 5, 2018, the court, *Kwak, J.*, held a status conference at which the parties addressed the respondent's motion to consolidate. At the status conference, the petitioner objected to the motion to consolidate, arguing that the emergency motion requested separate remedies from those he sought by means of the habeas petition. In response, the respondent reiterated that, although there was no objection to holding an expedited trial, holding a separate hearing on the motion and a trial on the merits of the petition would result in two identical trials. The respondent then indicated that a consolidated proceeding would require at least one full day of trial. This prompted the following colloquy:

"The Court: At least a day?

"[The Petitioner's Counsel]: Yeah. It's basically, Your Honor, I believe the case would entail the testimony of competing expert witnesses and probably one or two fact witnesses from the [department].

"The Court: Okay. Well, if you need another day, then we'll have to pick another day but—or at least [an] available date. All right. [The petitioner], he's . . . grieved me previously. So, I don't know if I should be on this case or not, but . . . . So . . . the earliest date would be . . . . It was a January 26th date, but that's before me and obviously I can't do that.

"[The Petitioner's Counsel]: I see.

"The Court: So, let's see what the next [date] would be that'll be available.

"[The Respondent's Counsel]: So, I'm not opposing the notion of the next [date] to have a hearing in.

"The Court: Okay.

"[The Respondent's Counsel]: And if it has to be bifurcated with—in two parts, that's the way it'll be.

"The Court: Okay.

"[The Clerk]: Your Honor, we have a morning available on [January 30, 2018].

"The Court: Just a half day, though? . . . .

"[The Clerk]: [January 30]. We have a half a day.

"The Court: Do you want half a day or you want a full day?

"[The Petitioner's Counsel]: Well, I think probably

it's going to take a whole day, but, you know, we, as the petitioner, will take what we can get.

"[The Respondent's Counsel]: We're not opposing any, you know, expedited—

"The Court: All right. Then, we'll take the half a day on January 30th, which is the earliest available."

Immediately following this discussion, the court adjourned. Judge Kwak never expressly granted the motion to consolidate, nor did he specify whether the scheduled court date would be a hearing on the emergency motion or a consolidated trial. On January 22, 2018, the respondent filed a return to the petition for a writ of habeas corpus, raising four special defenses: (1) the petitioner had not stated a claim for which relief can be granted; (2) the petitioner's injuries, if any, were not of a constitutional dimension; (3) the petitioner's claims were barred by res judicata or collateral estoppel; and (4) the habeas court lacked jurisdiction to order the petitioner returned to Whiting. On January 29, 2018, the petitioner filed a case flow request to reschedule the "hearing on emergency application for [a] temporary order" to February 1, 2018, which the court granted on January 30, 2018. As of February 1, 2018, the petitioner had not filed a reply to the respondent's return and the pleadings were not yet closed.[2]

On February 1, 2018, the habeas court, *Hon. Edward J. Mullarkey*, judge trial referee, commenced the proceeding, explaining that "[w]e have an emergency hearing today that was granted by—from the file, it's either Judge Kwak or Judge Oliver. . . . And we're going to hold it today. And we're pretty much going to finish it today." The petitioner then presented testimony from Dr. Baranoski along with testimony from three mental health care professionals employed by the department: Mark Frayne, a supervising psychologist; Gerard Gagne, a psychiatrist; and Craig Burns, the director of psychiatric services for the department.

In the course of the proceeding, there was further discussion between the court and the attorneys that indicated the court's intent to hold only a shortened and expedited hearing, rather than a lengthy trial. Before the petitioner called Dr. Burns to testify, the court indicated that the petitioner should expect to finish presenting his evidence that day. In response, the petitioner's counsel raised concerns that she would not be able to complete her presentation of the evidence in that time frame.

Once Dr. Baranoski and the three other mental health professionals had testified, the petitioner wanted to have Dr. Baranoski respond to the testimony of the three mental health professionals, which prompted this colloquy:

"The Court: Is that going to be your last witness in this case?

"[The Petitioner's Counsel]: Today.

"The Court: No, in the case.

"[The Petitioner's Counsel]: I think that there is an open question about whether or not there are additional issues in this case. This case started out with a habeas. In that habeas, I filed an emergency motion. Judge—

"The Court: That some judge granted.

"[The Petitioner's Counsel]: Which the judge granted. That's why we're here today. Originally, we were supposed to have a half-day. Now, we've had a whole day. [The respondent's counsel] filed a pleading . . . in which he took the position that the habeas itself and the emergency hearing should [be] collapsed into one matter.

"The Court: Yes. I read all of this stuff. . . . I got a simple question. You got any other witnesses?

"[The Petitioner's Counsel]: Not in this hearing, except that I would like to—

"The Court: What about the [department] officers [who've] been sitting outside all day?

"[The Petitioner's Counsel]: No.

"[The Respondent's Counsel]: So, that's an abuse of the subpoena, Your Honor. . . .

"The Court: No, no, no, no.

"[The Respondent's Counsel]: It's, it's, it's infuriating. I don't think that's a good faith use of the subpoena, quite frankly.

"The Court: We're not, we're not raising any more issues. This is an emergency hearing. It should be over . . . in the next half hour. . . . Otherwise it's not an emergency . . . and was mispleaded. . . .

"[The Petitioner's Counsel]: I would like to say—

"The Court: I don't care what you like. Sit down. You want to call Dr. Baranoski, you call her, but that will be . . . your last [witness]."

Thereafter, following arguments from counsel for both parties, the court issued its decision from the bench. The court concluded that the petitioner had failed to establish that the department was deliberately indifferent to his mental health. The court then concluded by holding: "[The] petitioner not having met his burden, the petition for [a] writ of habeas corpus is denied. You may have an exception." The court adjourned the proceeding immediately thereafter.

On February 13, 2018, the petitioner filed a motion for reconsideration, arguing that the proceeding on February 1, 2018, solely was a hearing on the petitioner's emergency motion and that the petitioner's procedural due process rights were violated because he had

received no notice that the court would also be deciding his habeas petition and was denied a meaningful opportunity to be heard. The petitioner, therefore, requested that the court reconsider its decision and allow the petitioner sufficient time to prepare and present his argument in support of his habeas petition in the course of a full trial on its merits. The court granted the motion for reconsideration on February 15, 2018. In its order, the court reiterated that the petitioner had failed to meet his burden of proof and once again denied the habeas petition. On February 13, 2018, the petitioner filed a petition for certification to appeal, which the court granted on February 15, 2018. This appeal followed.[3]

On appeal, the petitioner claims that the habeas court violated his rights to procedural due process by denying the habeas petition without providing adequate notice that it was holding a trial on the merits of the habeas petition and without affording him a meaningful opportunity to be heard. We agree.

We begin with the standard of review and general principles relevant to the petitioner's procedural due process claim. "Whether the court violated the [petitioner's] constitutional procedural due process rights is a question of law over which our review is plenary." *Merkel* v. *Hill*, 189 Conn. App. 779, 786, 207 A.3d 1115 (2019). "[F]or more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. . . . It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. . . . Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . Instead, due process is a flexible principle that calls for such procedural protections as the particular situation demands. . . . [T]hese principles require that a [party] have . . . an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." (Citation omitted; internal quotation marks omitted.) *In re DeLeon J.*, 290 Conn. 371, 378, 963 A.2d 53 (2009).

We agree with the petitioner that there was ambiguity as to whether the court proceeding scheduled for February 1, 2018, was a hearing on the emergency motion or a full trial on the merits of the habeas petition. During the status conference, Judge Kwak never formally granted the respondent's motion to consolidate, resulting in the petitioner's understandable uncertainty regarding the purpose of the subsequent proceeding. Moreover, the colloquy between the court and the respondent's counsel compounded the ambiguous nature of the proceedings. The respondent's counsel

remarked that a consolidated proceeding would take at least one full day of trial while conceding that, "if it has to be bifurcated" to accommodate the court's schedule, "that's the way it'll be." The court thereafter scheduled the subsequent hearing for only one-half day, seemingly suggesting that it was bifurcating the adjudication of the emergency motion and the habeas petition per the respondent's request. Without further clarification from the respondent's counsel on what the "it" was that should be bifurcated, one reasonable assumption was that Judge Kwak had bifurcated the proceedings and, thus, the next court date would only be a hearing on the emergency motion. Furthermore, the petitioner sought a continuance solely for the "hearing on emergency application for [a] temporary order" to reschedule the hearing to February 1, 2018, which the court granted without clarification that it would schedule the habeas trial for that date as well.

Then, throughout the entirety of the February 1, 2018 proceeding, the habeas court repeatedly indicated that the matter before it was only an "emergency hearing" and limited the petitioner's ability to present evidence accordingly. The court itself, though, appeared conflicted on the status of the case when it later commented that "some judge [had] granted" the emergency motion, thereby suggesting that the emergency motion had already been resolved and the proceeding was, instead, an expedited habeas trial. Last, when the respondent raised several affirmative defenses in his return, the petitioner was entitled to file a reply to any of the claims that were not put in dispute by his habeas petition. See Practice Book § 23-31 (a). Pursuant to Practice Book § 23-35 (c), the petitioner should have had until February 22, 2018, to file a reply. The fact that the pleadings were not closed as of February 1, 2018, further supports the petitioner's belief that the proceeding scheduled for that date would not be a trial on his habeas petition.

Given these facts and the fundamental nature of the rights at issue in a petition for a writ of habeas corpus, we conclude that the ambiguities in the proceeding should be interpreted in favor of the petitioner.[4] The petitioner reasonably believed that he was proceeding solely on his emergency motion and that his habeas trial would occur at a later date. He, therefore, should not be precluded from an opportunity to succeed on the merits of his habeas petition. To hold otherwise would deprive the petitioner of his procedural due process rights to be duly notified of the nature of the pending proceeding and to present fully his evidence and arguments to the court.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] In the alternative, the petitioner contends that the habeas court erroneously concluded that the Department of Correction (department) was not

acting with deliberate indifference to his serious mental health needs. We acknowledge that the habeas court heard extensive evidence on this issue and found that the respondent was not deliberately indifferent to his mental health needs. Because, however, we conclude that the petitioner was not afforded adequate notice and an opportunity to be heard on his habeas petition, we need not reach the issue of whether the department was deliberately indifferent.

[2] Practice Book § 23-31 (a) provides: "If the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petitioner, the petitioner shall file a reply."

[3] Specifically, the petitioner appeals from the judgments rendered on his emergency motion, his habeas petition, and his motion for reconsideration. Upon our review of the record, however, there is no indication that the habeas court ever rendered judgment on the emergency motion. Instead, it appears that, in the February 1, 2018 proceeding, the court's judgment addressed only the habeas petition. The petitioner's appeal from his emergency motion, therefore, is not properly before us due to the lack of a final judgment.

[4] We recognize that, because we remand the case for further proceedings, factual issues resolved by the court during the underlying trial may well be relitigated. We express no opinion as to what, if any, effect should be given to the habeas court's factual findings. See footnote 1 of this opinion.