******************************************

    The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

*Syllabus*

The respondent father filed a motion to open the judgment rendered by the trial court terminating his parental rights with respect to his minor daughter, P. In his motion, the father alleged that, although he had consented to the termination of his parental rights, he had recently discovered information that indicated that the mother of P and the mother's attorney had committed fraud by failing to provide certain vital information to the court and, that if he had known that information, he would not have voluntarily given up his parental rights. The mother filed a motion to dismiss the father's motion to open. Eight days prior to the scheduled hearing on the father's motion, the father's parent called the court clerk's office and stated that the father, who was incarcerated in the state of Washington, would not be able to make it to court. The record contained notes from a clerk indicating that a call was placed to the correctional facility in Washington and that the clerk was told that, although the prison had access to Microsoft Teams, the collaborative meeting software used by the Connecticut Judicial Branch for remote hearings, it was only used for internal purposes, and that the prison "[did] not do virtual for inmates." The scheduled hearing on the father's motion to open took place even though the father was not present. The court thereafter dismissed the father's motion. The father appealed to this court, claiming, inter alia, that the court erred in dismissing his motion to open by proceeding with the hearing in his absence and without giving him a chance to participate remotely. *Held* that the trial court violated the respondent father's due process rights in conducting the hearing on his motion to open without giving him a meaningful opportunity to be heard on his motion: it was undisputed that the father was not present and was not afforded an opportunity to participate remotely, either by telephone or a video conferencing platform, at the hearing on his motion to open the judgment terminating his parental rights, and there was nothing in the transcript of that hearing that indicated that steps had been taken to provide the father with a meaningful opportunity to participate and be heard at the hearing, as the transcript simply reflected that counsel for the mother told the court that the father was incarcerated in the state of Washington; moreover, even though the court's written order dismissing the father's motion stated that the clerk's office had previously attempted to have the father participate remotely from the correctional facility but that the facility indicated that they used a platform other than Microsoft Teams, that was not the only means by which the father could have participated, as he could have participated via telephone or the hearing could have been rescheduled to a future date at which the father's participation could be secured; accordingly, the case was remanded for a new hearing on the motion to open, at which the father was to be provided with a meaningful opportunity to be heard on the motion.

Argued November 9, 2023—officially released January 31, 2024**

*Procedural History*

Petition to terminate the respondent father's parental rights with respect to his minor child, brought to the Probate Court in the district of Stamford and transferred to the Superior Court in the judicial district of Stamford-Norwalk, Juvenile Matters, where the respondent father consented to the termination of his parental rights; thereafter, the case was tried to the court, *Maronich, J.*; judgment terminating the respondent father's parental rights; subsequently, the court, *E. Richards*,

*J.*, dismissed the respondent father's motion to open the judgment, and the respondent father appealed to this court. *Reversed*; *further proceedings*.

*Michael W.*, self-represented, the appellant (respondent father).

*Opinion*

SEELEY, J. The self-represented respondent father,[1] Michael W., appeals from the judgment of the trial court dismissing his motion to open a judgment previously rendered by the court terminating his parental rights with respect to his minor daughter, P. T.-W. (P). In his motion to open, the respondent alleged that the judgment terminating his parental rights had been procured by fraud. On appeal, the respondent claims, inter alia, that the court improperly dismissed his motion to open the judgment terminating his parental rights at a hearing at which he was not present due to his incarceration in the state of Washington and was not given an opportunity to participate remotely, such as by telephone. We agree and reverse the judgment.

The following facts and procedural history are relevant to this appeal. Melissa T. became pregnant after she and the respondent commenced an intimate relationship in October, 2014. The respondent and Melissa T. moved to Connecticut in January, 2015, and P was born in July, 2015. Melissa T. and the respondent were never married but resided together until April, 2017. When they resided together, Melissa T. observed certain conduct by the respondent, including controlling behavior, that caused her to be concerned about the stability of his mental health and, ultimately, to end the relationship.

On April 10, 2017, Melissa T. filed an application for relief from abuse seeking a restraining order against the respondent, in which she alleged that she had "been subjected to a continuous threat of present physical pain or physical injury, stalking or a pattern of threatening . . . ."[2] That same day, the court issued an ex parte restraining order, which remained in effect until the matter was heard at a hearing on April 21, 2017, at which the court determined that the evidence was legally insufficient to demonstrate that Melissa T. had met her burden of proof to justify the issuance of a restraining order.

Thereafter, the parties became involved in a contentious battle for custody of P. Two days after Melissa T. filed her application for relief from abuse, the respondent petitioned the court for sole legal and physical custody of P. The parties thereafter stipulated to joint legal and shared physical custody. They subsequently filed numerous motions pertaining to custody and visitation of P that were resolved by a second stipulation dated July 31, 2017, which was approved by the court and provided for "a 'rotating 2-2-3 parental responsibility plan' but made no change to the prior agreement of joint legal custody." After Melissa T. filed an emergency motion for custody in August, 2017, the court granted the motion, awarded sole legal and physical custody of P to Melissa T., and ordered that the respondent's

parenting time with P be supervised. Following competing motions to modify custody, the parties entered into another stipulation, which was submitted for court approval on March 19, 2018. That stipulation granted decision-making authority to Melissa T. and changed the custody arrangement from shared parenting and visitation time to primary residence with Melissa T., with a more limited visitation schedule with the respondent. Melissa T. filed a second emergency motion for custody in September, 2018, claiming that " 'there [was] an immediate and present physical and psychological danger' " to P, and the parties entered into an agreement. The parties continued to file numerous motions relating to the custody of P, most of which were resolved following a trial that began in January, 2019, and concluded in May, 2019, that resulted in the court issuing a lengthy memorandum of decision in which it made numerous orders, including awarding sole legal and physical custody of P to Melissa T., suspending visitation with the respondent and ordering the respondent, inter alia, to participate in a program of intensive psychotherapy.

In 2018, Melissa T. sought and obtained a restraining order against the respondent that was extended to 2019.[3] The respondent violated that order when, on November 24, 2019, he attempted to break into Melissa T.'s residence while she and P were in that residence.[4] As a result, the respondent was charged with criminal violation of a restraining order, burglary in the first degree, and attempt to commit risk of injury to a child. At a hearing before the court on October 28, 2020, the respondent entered a guilty plea to the charges of burglary in the first degree, criminal violation of a restraining order, and attempt to commit risk of injury to a child, with a proposed total effective sentence of ten years, execution suspended after a minimum period of one year and a maximum period of three years, with that effective term being determined by the court at sentencing, and five years of probation. As an additional condition of the plea, the prosecutor asked the court to issue three full no contact protective orders for the protection of Melissa T., her husband, and P. At that hearing, the prosecutor specifically stated that the period of those protective orders would be "forty years for [Melissa T.] and her husband and until the child's eighteenth birthday for [P]." The respondent's counsel indicated that the respondent, who was present at that hearing, "[was] in agreement with those conditions."

At the respondent's sentencing hearing on December 30, 2020, at which the respondent was present, the court sentenced the respondent, in accordance with the plea agreement, to a total effective sentence of ten years, execution suspended after one year, with five years of probation. The court also specifically recounted the conditions of its standing criminal protective orders and their duration, stating that the orders pertaining to

Melissa T. and her husband would expire on December 30, 2060, and that the one pertaining to P would expire in July, 2033, on her eighteenth birthday. The court also made clear to the respondent that, with respect to those protective orders, he has to "stay away from the home of the protected person, wherever that person may reside," "have no form of contact with the protected person, including any written, electronic or telephonic contact, and . . . not contact the protected person's home or place of others with whom the contact will be likely to cause annoyance or alarm to the protected person or persons." The respondent also was ordered to stay 100 yards away from all three protected persons. Those same conditions apply to all three protective orders. At that hearing, Melissa T.'s attorney was asked if he had anything to say, to which he remarked that he wanted the respondent to know that the criminal protective orders that were being put in place at that hearing as part of the criminal disposition supersede the restraining order that previously had been in place.[5]

On March 5, 2021, Melissa T. filed a petition in the Probate Court seeking to terminate the respondent's parental rights with respect to P on the grounds that (1) P had been abandoned by the respondent, (2) P had been denied the care, guidance or control necessary for her physical, educational, moral or emotional well-being by reason of acts or parental commission or omission, namely, the respondent had pleaded guilty to attempting to commit risk of injury to a child, for which a criminal protective order was issued that precluded the respondent from having any contact with P for the next fourteen years, (3) there was no ongoing parent-child relationship between P and the respondent, and (4) P had been found in a prior proceeding by the Probate Court to have been neglected and the respondent has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time and considering the age and needs of P, the respondent could assume a responsible position in P's life. The matter was subsequently transferred to the juvenile division of the Superior Court.

On August 30, 2021, the respondent executed and signed an affidavit consenting to the termination of his parental rights. Thereafter, on October 21, 2021, the court rendered judgment terminating the respondent's parental rights pursuant to its findings, by clear and convincing evidence, that the respondent had voluntarily consented to the termination of his parental rights and that such termination was in P's best interest.

On June 10, 2022, the respondent filed a motion to open the judgment terminating his parental rights. In that motion, the respondent alleged, inter alia, that, in the preliminary meetings leading to the termination of his parental rights, Melissa T. and her attorney committed fraud by failing to provide vital information to the

court. Specifically, he alleged that information pertaining to Melissa T.'s health was "hidden from the court," that he had just discovered the "horrible news" a few weeks prior, and that if he had known such information, he would not have voluntarily given up his parental rights and, instead, would have proceeded with a hearing on the termination petition.

A hearing on the respondent's motion to open was initially scheduled for July 5, 2022, but that date was continued to September 6, 2022, at the request of Melissa T.'s attorney, who had a conflict. On July 25, 2022, P was adopted by Melissa T.'s husband. Subsequently, on September 2, 2022, Melissa T. filed a motion to dismiss the respondent's motion to open the judgment terminating his parental rights. In her motion to dismiss, Melissa T. argued that the respondent's motion to open was not timely filed and, thus, was barred by the statute of limitations. She also asserted that a final judgment of stepparent adoption had been rendered with respect to her husband, who is now P's sole father. In her motion, Melissa T. also noted that, on December 30, 2020, the respondent had pleaded guilty to criminal violation of a protective order, burglary in the first degree, and attempt to commit risk of injury to a child, and was sentenced to ten years of incarceration, execution suspended after one year, followed by five years of probation. Melissa T. further noted that "[a] protective order was issued against [the respondent] preventing him from having any contact with [P] until she [is] eighteen years old."

On September 6, 2022, the respondent sought a continuance of the September hearing date on his motion to open on the ground that his attorney " 'quit' " and he needed more time to prepare for the hearing as a self-represented party. A continuance was granted, and a hearing was set for October 6, 2022. On September 28, 2022, the respondent's father called the court clerk's office and stated that the respondent, who was incarcerated in the state of Washington at the time, would not be able to make it to court for the October 6, 2022 hearing. The record contains notes from a clerk dated September 29, 2022, indicating that a call was placed to the correctional facility in Washington and that the clerk was told that, "while the prison had access to [Microsoft Teams],[6] it was only used for internal purposes," and that the prison "[does] not do virtual for inmates." (Footnote added.)

The scheduled hearing on the respondent's motion to open took place on October 6, 2022, despite the fact that the respondent was not present at the hearing due to his incarceration in Washington. After counsel for the parties identified themselves at the hearing, the following colloquy took place between the court and Frank Bevilaqua, the attorney for Melissa T.:

"The Court: All right. . . . Is the [respondent] here

today or?

"[Attorney Bevilacqua]: . . . I provided [this] [court] with information. [The respondent] is currently incarcerated in Washington state waiting for extradition for violating . . . the standing protective orders that were in [place] on file with my client, Melissa T., and her current husband. So, I don't know if there's going to be a Zoom or not. I gave the—the clerk's office all of the information of where . . . [the respondent] is currently residing. I hate using the term residing but being held.

"The Court: All right. Anything else? Was it down for dismissal today or what was the? Okay. All right. So, do we know where the father is? Has there been any attempt to contact him in Washington state or has there been service in that regard, do we know?

\* \* \*

"The Court: And so, the motion [to open] is by the [respondent], correct me if I am wrong, he is not here.

"[Attorney Bevilacqua]: Correct. . . .

"The Court: He's incarcerated in . . . the far west, Washington state.

"[Attorney Bevilacqua]: Correct.

"The Court: All right.

"[Attorney Bevilacqua]: Based on his violation of the protective order[s] and terms of his release where the protective order[s] w[ere] imposed against him in criminal court by Judge White.

"The Court: Yes.

"[Attorney Bevilacqua]: And as in [Melissa T.], [Melissa T.'s husband], and . . . [P] [were] the recipients of the standing protective order[s].

"The Court: The [respondent's] rights were previously terminated, is that correct?

"[Attorney Bevilacqua]: Correct, Your Honor. By this court.

"The Court: All right.

"[Attorney Bevilacqua]: In this jurisdiction. . . .

"The Court: There's a full permanent protective order in effect [enjoining] the [respondent] from having contact with the child. Is that correct?

"[Attorney Bevilacqua]: Correct, Your Honor. For the next nineteen years, seventeen to nineteen years. . . .

"The Court: All right. Anything else?

"[Attorney Bevilacqua]: No, Your Honor.

"The Court: I'm going to dismiss the matter. . . . Just so the record is clear, there is a full protective order [enjoining] the respondent . . . from having any

contact with the child . . . . He can't have contact with that child by order of Judge White by order of the Stamford court. In light of those factors, to have any relitigation of the motion would . . . in my mind, violate the best interest rule of the child . . . .

"So, with that end in mind, while I understand it is a bit of a stretch to, I don't want to say bit of a stretch, but it—I don't like to have a motion to dismiss without all the parties present. In view of the fact that the father filed this motion. The child is in, has been adopted, is in the custody of another individual. Apparently, the reason for that, at least part of the reason for that termination of parental rights and the custodial change, was the [respondent's] violence against the child, who [the respondent] now wishes to have contact with, yield the fact that there is a full protective order. . . . The court is going to find that it is in the best interest . . . of the child to dismiss the . . . [respondent's motion to open] at this time."

The court thereafter issued a written order, consistent with its oral decision, dismissing the motion to open. The order stated: "[The respondent], [whose parental rights previously were terminated], has filed a motion to [open] alleging fraud. [The respondent] is incarcerated in Washington state. There is a permanent protective order in effect, which was previously ordered by the Stamford criminal court against the [respondent]. [The respondent] is not present today. [The] clerk's office previously attempted to have the [respondent] participate remotely from jail, but [the] correctional facility indicated that they use a different platform, other than [Microsoft] Teams. Since [the respondent] is not present today, and because a permanent protective order is in effect against [the respondent], the court enters a dismissal as to [the respondent's] motion to [open]." The respondent subsequently filed a timely appeal challenging the dismissal of his motion to open and seeking a new hearing thereon.

Thereafter, pursuant to Practice Book § 66-5, the respondent filed a motion for articulation, seeking to have the court articulate, inter alia, the legal and factual basis for its dismissal of his motion to open. In an articulation dated January 24, 2023, the court set forth the factual and procedural history of the case and stated: "On the basis of the statute of limitations alone, the [respondent's] motion to [open] [the] judgment is time barred. But, in the event that the [respondent] meets the initial threshold to open [the] judgment, it is the trial court's opinion that, on the basis of the previously mentioned case history, including the [respondent's] plea to the aforementioned felony charges and the subsequent adoption of the child on July 25, 2022, it would be disruptive to and not in the best interest of the child to [open] the judgment."[7]

On appeal, the respondent claims that the court erred

in dismissing his motion to open by proceeding with the hearing on the motion in his absence and without giving him a chance to participate remotely. Specifically, he claims that he had a right to be heard on his motion and to participate in the proceeding. He asserts that the court was aware that he would not be able to make it to court for the proceeding, as his father had called the clerk's office eight days prior to the proceeding and informed the clerk of his incarceration in Washington. He also notes that the hearing had been rescheduled previously and that it, again, should have been rescheduled to enable his participation. We agree with the respondent.

The following legal principles are relevant to the respondent's claim. "[F]or more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. . . . It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. . . . Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . Instead, due process is a flexible principle that calls for such procedural protections as the particular situation demands. . . . [T]hese principles require that a [party] have . . . an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 198 Conn. App. 320, 332, 232 A.3d 1229 (2020). "It is the settled rule of this jurisdiction, if indeed it may not be safely called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard. . . . *Hasbrouck* v. *Hasbrouck*, 195 Conn. 558, 559–60, 489 A.2d 1022 (1985). It is a fundamental premise of due process that a court cannot adjudicate a matter until the persons directly concerned have been notified of its pendency and have been given a reasonable opportunity to be heard in sufficient time to prepare their positions on the issues involved." (Internal quotation marks omitted.) *Egan* v. *Egan*, 83 Conn. App. 514, 518, 850 A.2d 251 (2004); see also *Davis* v. *Davis*, 200 Conn. App. 180, 190, 238 A.3d 46, cert. denied, 335 Conn. 977, 241 A.3d 130 (2020).

"It is a fundamental tenet of due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution that persons whose . . . rights will be affected by a court's decision are entitled to be heard

at a meaningful time and in a meaningful manner. . . . Whe[n] a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing, an order cannot be sustained." (Internal quotation marks omitted.) *Ill* v. *Manzo-Ill*, 210 Conn. App. 364, 376–77, 270 A.3d 108, cert. denied, 343 Conn. 909, 273 A.3d 696 (2022). "In exercising its statutory authority to inquire into the best interests of the child, the court . . . must . . . exercise that authority in a manner consistent with the due process requirements of fair notice and reasonable opportunity to be heard." (Internal quotation marks omitted.) *Petrov* v. *Gueorguieva*, 167 Conn. App. 505, 515, 146 A.3d 26 (2016). "Whether a party was deprived of his [or her] due process rights is a question of law to which appellate courts grant plenary review." (Internal quotation marks omitted.) *Coleman* v. *Bembridge*, 207 Conn. App. 28, 45, 263 A.3d 403 (2021).

Moreover, "[i]t is undisputed that [t]he right of a parent to raise his or her children has been recognized as a basic constitutional right. *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). Accordingly, a parent has a right to due process under the fourteenth amendment to the United States constitution when a state seeks to terminate the relationship between parent and child. See *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)." (Internal quotation marks omitted.) *In re Egypt E.*, 322 Conn. 231, 244, 140 A.3d 210 (2016); see also *McDuffee* v. *McDuffee*, 39 Conn. App. 412, 415–16, 664 A.2d 1164 (1995) ("natural parent has a protected liberty interest in a relationship with [his or] her child and, therefore, has a constitutional right to be present and to be heard at hearings affecting that relationship"). In the present case, the court held a hearing, without any participation by the respondent, on his motion seeking to open and to reverse the judgment terminating his parental rights with respect to P, which clearly implicates his constitutional right to parent his child and the attendant due process protections afforded to parents.

In *In re Aisjaha N.*, 343 Conn. 709, 726, 275 A.3d 1181 (2022), our Supreme Court noted that "trial courts have an obligation to ensure that parties have the ability to meaningfully participate . . . ." In that case, the court declined the party's invitation to invoke its "supervisory authority to create a rule requiring that a trial court, before conducting a virtual trial in a child protection case, ensure that the parties either appear by two-way videoconferencing technology or waive the right to do so, after a brief canvass." Id., 726–27. Nevertheless, the court took the "opportunity to emphasize the importance of ensuring equal access to justice" in the contexts of virtual hearings. Id., 727. Relevant to the present case, the court stated that, "[i]n situations in which parties or witnesses express an inability to partic-

ipate in virtual proceedings, it is imperative that our courts either provide alternative means of accessing the technology needed to participate . . . or continue the proceeding until it can be conducted in person or until such time as the party or witness has secured the necessary technology to meaningfully participate in the proceeding. Courts must also be mindful of ensuring that parties have equal access to the same technological means to participate in the virtual trial, such as ensuring that both parties participate by either video and audio or audio only." Id., 729–30.

In the present case, it is undisputed that the respondent was not present and was not afforded an opportunity to participate remotely, either by telephone or a video conferencing platform, at the hearing on his motion to open the judgment terminating his parental rights. There is nothing in the transcript of that hearing indicating that steps were taken to provide the respondent with a meaningful opportunity to participate and be heard at the hearing. Instead, the transcript simply reflects that counsel told the court that the respondent was incarcerated in the state of Washington. Moreover, even though the court's written order states that the "clerk's office previously attempted to have the [respondent] participate remotely from jail, but [the] correctional facility indicated that they use a different platform, other than [Microsoft] Teams," that is not the only means by which he could have participated. For example, in *In re Juvenile Appeal (Docket No. 10155)*, 187 Conn. 431, 434, 446 A.2d 808 (1982), the trial court denied a request for a continuance in which the respondent father, who was incarcerated in California, sought a continuance until his expected release from prison so that he could be physically present at the termination of his parental rights trial. Our Supreme Court concluded that the father was not denied due process, especially given the unusual measures taken by the court to secure the father's long-distance participation following its denial of his motion for a continuance. Id., 435–41. Specifically, on the initial day of hearings, the state's principal witness testified and was cross-examined by the father's counsel, and a complete transcript of that hearing was sent to the father, who was given time to discuss the witness' testimony with his counsel by telephone. Id., 436–37. At the second session, a speaker was attached to a telephone at the court in Connecticut and the father testified and was cross-examined from his California prison. Id., 437. As a result of these measures, the court determined that the father's telephonic testimony adequately protected his due process rights. Id., 435–41; see also *In re Aisjaha N.*, supra, 343 Conn. 723 n.6.

In contrast to the procedures followed in cases such as *In re Juvenile Appeal (Docket No. 10155)* and *In re Aisjaha N.*, the record in the present case does not demonstrate that the respondent was given a meaning-

ful opportunity to be heard at the hearing on his motion to open.[8] See *Egan* v. *Egan*, supra, 83 Conn. App. 518–19 (court, which proceeded with hearing on motion to terminate child support in plaintiff's absence, denied plaintiff due process by failing to provide plaintiff with notice of hearing on motion to terminate child support and meaningful opportunity to be present and be heard on motion). If there was a problem with the video conferencing platform used by the correctional facility in Washington, the respondent could have participated via telephone; see *In re Juvenile Appeal (Docket No. 10155)*, supra, 187 Conn. 436–37 (father who was incarcerated in California participated at termination of parental rights hearing in Connecticut via telephone); *In re Takie O.*, 215 Conn. App. 580, 584, 282 A.3d 1279 (on first day of trial on termination of parental rights petition, respondent father joined proceeding by telephone), cert. denied, 345 Conn. 922, 284 A.3d 982 (2022); or the hearing could have been rescheduled to a future date at which the respondent's participation could be secured. See *In re Aisjaha N.*, supra, 343 Conn. 729–30. Accordingly, because the hearing was conducted in violation of the respondent's due process rights, the court's dismissal of his motion to open cannot stand. For that reason, the case must be remanded for a new hearing on the motion to open,[9] at which the respondent must be given a meaningful opportunity to be heard on the motion.[10]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

** January 31, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The minor child's mother, Melissa T., filed a petition in the Probate Court seeking to terminate the respondent father's parental rights with respect to their minor child. Thereafter, the matter was transferred to the Superior Court. The respondent father subsequently consented to the termination of his parental rights, and the court rendered judgment terminating his parental rights.

Melissa T. did not file a brief and is not otherwise involved in this appeal and, as a result, this court issued an order on September 6, 2023, stating that the appeal will "be considered on the basis of the [respondent's] brief and, if applicable, the appendix, the record, as defined by Practice Book [§] 60-4, and oral argument . . . ." Furthermore, the attorney for the minor child, who had anticipated adopting the position of Melissa T. in this matter but could not do so when no appellee brief was filed, filed a letter dated October 19, 2023, stating that it is the minor child's position that the court properly dismissed the respondent's motion to open and that, if the respondent were to prevail, it would "cause direct harm to the child's wishes and best interests."

[2] In her affidavit in support of her application, Melissa T. alleged, inter

alia, that the respondent had exhibited erratic, manipulative, and hostile behavior toward her, which made her fear for her safety, that the respondent had been taking her prescription pain medications for recreational use, and that one night his behavior escalated when he restrained her to grab her phone.

[3] Specifically, in her affidavit in support of her 2018 application for relief from abuse, Melissa T. alleged that she was in "imminent fear for [her] physical safety and [her] daughter's well-being caused by behavior and communication of [the respondent]." She further alleged that the respondent's actions were "abusive, angry, full of hatred and escalating in both rage and frequency," and that he had been engaging in a pattern of stalking. On September 26, 2018, the court, *Heller*, *J.*, issued a full, no contact restraining order against the respondent as to Melissa T. and P. On October 16, 2018, the court extended the order for one year with respect to Melissa T. but lifted it as to P.

[4] Specifically, at the respondent's plea hearing, the state asserted that, "[a]t approximately 2:04 and 2:13 in the morning, the [respondent] illegally entered a dwelling unit at [a particular address where Melissa T. resided] without consent after sunset at night and attempted to make entry into [Melissa T.'s] unit. Inside the unit was [Melissa T.'s] minor child. The defendant at the time had made a number of statements indicating his intent to take custody of the child to quote, unquote, rescue her from [Melissa T.]. It is the state's allegation that that is what he was trying to accomplish on the night in question."

[5] In his appellate brief and at oral argument before this court, the respondent challenges the existence of the condition of the protective order precluding him from having any contact with P until she reaches eighteen years of age that was issued by the court at the time of sentencing. For example, at oral argument before this court he stated that it is "not true" that he cannot talk to his daughter until she is eighteen. In his appellate brief, he further asserts: "One of the most important false statements in the motion to dismiss came with an exhibit attached. The information presented to the court stated, 'a protective order was issued against [the respondent] preventing him from having any contact with the minor child until age eighteen years old.' This is an untrue fact." We disagree. We have carefully reviewed the transcripts of the respondent's plea and sentencing hearings in the criminal proceeding, at which the court clearly and explicitly stated the terms of the standing criminal protective order related to P. Under those terms, the protective order remains in place until P reaches eighteen years old, and the respondent is "to have no form of contact with the protected person, including any written, electronic or telephonic contact . . . ." The respondent bases his assertion on a clerk's notation on a criminal docket sheet, dated the same day as the sentencing hearing, stating that the respondent is to have no contact with Melissa T. or P "other than through [M]y [F]amily [W]izard." The clerk's note, however, was not signed by the judge and contains a scrivener's error. See *RCN Capital, LLC* v. *Sunford Properties & Development, LLC*, 196 Conn. App. 823, 835 and n.6, 231 A.3d 201 (2020). The actual orders of protection signed by the judge include the condition that the respondent have no contact with the protected persons "in *any* manner, including by written, electronic or telephonic contact," and make no reference to contact through "[M]y [F]amily [W]izard," which clearly would contradict the no contact order imposed by the court. (Emphasis added.)

[6] Microsoft Teams is "collaborative meeting [computer software] with video, audio, and screen sharing features." Connecticut Judicial Branch, Connecticut Guide to Remote Hearings for Attorneys and Self-Represented Parties (January 17, 2024), p. 5, available at https://jud.ct.gov/HomePDFs/ConnecticutGuideRemoteHearings.pdf (last visited January 31, 2024).

[7] On April 5, 2023, the respondent filed a motion for review of the trial court's articulation. On April 26, 2023, this court granted the motion for review but denied the relief requested therein.

[8] The respondent does not claim on appeal that he lacked adequate notice of the hearing.

[9] We note that the record is ambiguous as to whether the hearing on October 6, 2022, also concerned Melissa T.'s motion to dismiss. The summons ordering Melissa T. to appear on October 6, 2022, indicates that the scheduled hearing pertained to the respondent's motion to open, and the record does not contain any notice for a hearing on Melissa T.'s motion to dismiss. The court's written order containing its judgment of October 6, 2022, however, indicates that the order pertains to both the motion to dismiss and the

motion to open, and judgment was rendered dismissing the respondent's motion to open. Moreover, the transcript of the hearing of October 6, 2022, does little to clarify this issue, as the court did not state clearly what motion or motions were before it, and it referenced both the motion to dismiss and the motion to open. Nevertheless, regardless of whether the hearing concerned the motion to dismiss in addition to the motion to open, we have determined that the October 6 hearing was improper in that it took place in violation of the respondent's due process rights; accordingly, the judgment rendered at that hearing dismissing the respondent's motion to open cannot stand. We remand for a new hearing on the motion to open only, as requested by the respondent in his appellate brief. On remand, however, Melissa T. is free to renew her motion to dismiss or to file a new one and seek a hearing thereon, should she choose to do so.

[10] In light of our determination that a new hearing on the motion to open is necessary, we need not address the respondent's claim that the court improperly based its decision dismissing his motion to open on hearsay and otherwise inadmissible testimony. Moreover, the respondent, in his appellate brief, makes a number of arguments that relate to the substance and merits of his motion to open. For example, he discusses the circumstances of his consent to the termination of his parental rights, first disputing that he ever consented and next arguing that he did so under duress. He also argues in his appellate brief that the court-appointed attorney who represented him during the termination of parental rights proceeding did not act in the best interests of the respondent or P, and that the court erred in determining that his motion to open was time barred because it was filed beyond the four month period in which motions to open must be filed. See General Statutes § 52-212a; Practice Book § 17-4. In light of our determination that it was improper for the court to proceed with the hearing on his motion to open without providing the respondent with a meaningful opportunity to be heard at the hearing, we need not address these arguments, as the merits of the motion to open will be litigated at a new hearing on the motion. Our decision, therefore, in no way reflects an opinion by this court concerning the merits of the motion to open. We simply hold that the court's judgment issued after the hearing held on October 6, 2022, must be reversed because the respondent had a right to be heard on his motion.